In the Matter of the Estate of August Diehn, Deceased.

Surrogate's Court, New York County, May 24, 1944.

*Joseph A. Cox, Sidney P. Simpson* and *Margaret Smith* for James F. Egan, Public Administrator of the County of New York, petitioner.

*Heber Smith* for Ludwig Diehn, respondent.

*Charles F. Fish,* attorney designated by Alien Property Custodian for Theresa Diehn-Slottko and another, persons within enemy territory.

FOLEY, S. This proceeding was brought for the judicial settlement of the intermediate account of the Public Administrator. The decedent died in Germany on January 17, 1942, shortly over a month from the time when a state of war arose between the United States and Germany. He was a resident of Berlin and a German national. At the time of his death he was an " enemy " under the terms of the Trading with the Enemy Act. (U. S. Code, tit. 50, Appendix, § 1 et seq.)

The gross assets of the decedent, which have been received by the Public Administrator, consisted of securities and cash of an approximate value of $1,160,000. The decedent was survived by a son, Ludwig Diehn, who has resided in the United States for some years but has not been naturalized. He has appeared in this proceeding and seeks a determination that he is the sole heir of the decedent under the German law of inheritance. He also asserts a claim to a present partial distribution on account of his alleged minimum share by intestacy. The contentions of his counsel upon this alternative demand arise because of the fact that the decedent might have left a widow, Theresa, and a daughter, Eva Maria.

The Alien Property Custodian appears for the alleged widow and the alleged daughter. He seeks a postponement of any determination as to the heirs of the decedent and his statutory distributees until the final accounting of the Public Administrator and after the termination of the war with Germany, when the true facts as to the persons entitled to share in the distribution of the estate will become definitely known.

Upon the present state of the record the Surrogate holds that no determination can be made as to the true distributees of the decedent. There is some testimony tending to prove that the decedent divorced his wife Theresa some years before his death. An exemplified copy of the alleged decree of divorce is not available for production. The proof as to such a divorce rests upon alleged oral admissions of the wife. This testimony is unsatisfactory and unconvincing. There is also some testimony that the alleged daughter, Eva, is illegitimate and that the decedent had been separated from his wife for a period of years before the birth of the alleged daughter. Again the testimony upon this phase of the case is unsatisfactory and unconvincing in its present state.

It appears from the testimony of an expert on German law that there is a form of action or proceeding which may be brought by the alleged father to declare the child illegitimate and not his issue. He testified also that in certain cases the independent action is brought concurrently with the action for

divorce against the wife who was the mother of the child. Exemplified proof of the initiation of either of such actions or proceedings in Germany and any adjudication thereof has not been submitted and is not presently available.

Moreover, the expert who testified for the son was unable to carry his knowledge of the law of inheritance or to produce copies of the statutes beyond the year 1939. It will be recalled that the death of the decedent occurred on January 17, 1942. Substantial alterations in the German statutes may have taken place in the intervening period prior to the death of the decedent which may have changed the class of persons entitled to inherit. This circumstance again compels the postponement of the determination of heirs until the facts and the law in existence at the death of the decedent can be accurately ascertained.

Additional reasons have been submitted to the Surrogate by the Alien Property Custodian which in the public interest require a denial of any present distribution of the estate funds to the son, Ludwig Diehn. Grave suspicion exists in the minds of the representatives of the Department of Justice of the United States and of the Alien Property Custodian as to whether the funds which appear to be the property of August Diehn, the decedent, were actually his personal and individual assets. The investigation as to the true nature of these assets is still unfinished and it is contended by the representatives of our Government that they may represent funds of the German Government or of a German corporation or business enterprise commonly known as the German Potash Syndicate.

The history and activities of the son, Ludwig, are likewise the subject of an incomplete investigation upon the question of whether any moneys which may be due to him from the estate may be made the subject of a vesting order by the Alien Property Custodian under the Trading with the Enemy Act and executive orders and regulations.

The representatives of the Government state that they plan four alternative forms of vesting orders: (1) upon the ground that the assets are actually the property of the Nazi Government or of its secret agents or of German corporations; (2) upon the ground that the entire balance of the estate, after payment of administration expenses, is the property of August Diehn, the decedent, as an enemy; (3) upon the ground that the interest of the son, Ludwig Diehn, may be vested under the Trading with the Enemy Act; and, (4) upon the ground that the possible shares of the alleged widow and alleged daughter of the decedent are the property of enemies.

The Alien Property Custodian is entitled to a reasonable time for investigation and decision as to whether any or all of these orders of vesting should be made.

In the face of the serious and extraordinary contentions asserted by the Government and in order to avoid any diversion of funds from the Alien Property Custodian, the Surrogate will not countenance any present distribution of the funds in the hands of the Public Administrator to the son of the decedent. Time may show that he has no interest whatsoever in this estate.

There is no hardship in waiting until the termination of the war and the ascertainment of the true facts as to the person or persons entitled to share in the estate as the heirs and distributees of the decedent. The final determination of all of these questions must be deferred until the final accounting of the Public Administrator.

An affidavit supplementing the intermediate account with amended schedules has been filed by the Public Administrator with the permission of the Surrogate.

Submit decree on notice settling the present intermediate account as amended and denying the application for a present determination of the distributee or distributees of the decedent and further denying the present application of Ludwig Diehn, the son of the decedent, for any partial distribution on account of his interest in the estate.